IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**ANTHONY HARRIS**                                                                                            **PLAINTIFF**

**V.**                                                                        **CAUSE NO. 3:19-CV-217-CWR-FKB**

**ALLSTATE VEHICLE AND**
**PROPERTY INSURANCE COMPANY**                                                                    **DEFENDANT**

## ORDER

Before the Court are cross-motions for summary judgment. After reviewing the arguments, evidence, and applicable law, the plaintiff's motion is granted, and the defendant's motion is granted in part and denied in part.

**I.    Background**

    **A.    Procedural History**

On June 14, 2017, Anthony Harris's home in Vicksburg, Mississippi, was destroyed by fire. The home was insured by Allstate. Harris made a claim under the insurance policy.

Allstate began an investigation on June 16, 2017. The investigation revealed that the cause of the fire was incendiary. As part of the investigation, Allstate took Examinations Under Oath (EUO) of Harris and his daughter LaQuale Harris (LaQuale).

On December 10, 2017, Allstate denied Harris's claim.[1] In justifying that decision, Allstate stated that Harris made material misrepresentations and concealed information critical to Allstate's investigation. Allstate also concluded that the fire was intentionally set by a person insured under the policy.

---

[1] The amended complaint states that Allstate paid $74,237.75 to Mutual Credit Union, which had a mortgage lien on Harris's home. The parties have not explained the reason for Allstate's payment. It may be that Allstate made the payment in compliance with a standard mortgage clause in the policy. *See* Miss. Code Ann. § 83-13-9; *see also Hartford Fire Ins. Co. v. Assocs. Capital Corp.*, 313 So. 2d 404, 407 (Miss. 1975).

On February 25, 2019, Harris filed this suit in Warren County Circuit Court. Allstate properly removed the case to this Court on April 1, 2019, pursuant to diversity jurisdiction.

In his amended complaint, Harris asserts that Allstate's refusal to pay policy limits was a breach of Allstate's contractual obligation and was intentional, willful, malicious, and in bad faith. Allstate responds that it had the right to deny Harris's claim based on circumstantial evidence that the fire was intentionally set and because of material misrepresentations made by a person insured under the policy. Both parties filed motions for summary judgment.

**B.    The Evidence**

The parties have stipulated that the fire was incendiary. Allstate argued and Harris did not contest that both LaQuale and Harris were considered insured persons. The remaining issues are: (1) whether Harris mispresented material information in the course of Allstate's investigation, and (2) whether Harris had motive and opportunity to set or cause the fire to be set.

The parties' first quarrel is whether Harris misrepresented who lived at the house. During his EUO on September 13, 2017, Harris identified himself and his daughter as the only two people who lived at his home. In LaQuale's EUO on October 10, 2017, however, she identified Jada Howard, Lashonda Thomas, Richard Thomas, Lamont Thomas, and Calvin Williams as persons whom had all, at one point or another, lived at Harris's home in the three years prior to the fire. Allstate did not interview any of the individuals she identified prior to denying the claim. As a part of the instant litigation, Harris was deposed. During that deposition he identified those same individuals that LaQuale mentioned as having lived at the home.

Another dispute concerns whether Harris lied about previous flooding at the property. During Harris's EUO, Allstate asked if his property had flooded on April 3, 2017. Harris stated that his neighborhood floods, but that water has never entered his house. He added that on April

3, the water reached the edge of his carport but did not flood his house. Other homes were flooded that day, but not his. During his deposition, Harris testified that water reached the carport and the patio of the house.

In LaQuale's EUO, she stated that the area around her father's house has flooded in the past. She explained that flood water has entered Harris's home two or three times, although she could not remember when. She described the water as seeping through the cracks of the house and causing damage to clothes, the carpet, and the bottom of a couch and table. LaQuale, who was not home on the day of the April 3 flood, was not asked about that flood specifically.

Allstate saw it differently. During its investigation, Allstate received a Substantial Damage Estimator Report following the April 3 flood which computed damages of $21,513.36 to Harris's property. Additionally, in a September 10, 2019, deposition of Richard Reed, a claim consultant with Allstate[2], Reed testified that he spoke with John Elfer, the Warren County Emergency Management Director. Elfer told Reed that he had personally assessed the flood water damage inside Harris's home following the April 3 flood. Harris never made a claim on his flood insurance policy.

Harris has disputed this testimony. He presented an October 21, 2019, affidavit by Elfer. There, Elfer states that he never went to Harris's home, that nobody in his office went inside Harris's home other than entering the garage, that he never personally saw flood water, that nobody under his supervision ever saw flood water inside the property, and that he never told Reed or Allstate that he personally saw flood water on the property. When deposed, Elfer stated that the Substantial Damage Estimator Report is a computer-generated report which calculated damages

---

[2] Reed appears to have been Allstate's Rule 30(b)(6) designee.

of $21,513.36 based on flooding elevation values inputted into the computer. Elfer testified that the flooding elevation used for the April 3 flood evaluation can be off by up to two feet.

Before denying the claim, Reed testified, Allstate did not look into Harris's financial affairs. The present evidentiary record shows that at the time of the fire, Harris was up-to-date on his mortgage and loan payments. He had past due balances and late fees on his electric bill, though, as well as several high-interest loans for which several items in his house served as collateral. These loans had their own insurance and were paid off as a result of the fire. On multiple occasions, Harris's bank account had a negative balance.

During Harris's EUO, Allstate asked whether he had any disputes with other individuals. He stated that he had made several 911 calls reporting cars driving by his home making loud noises. Harris also described an event, during which his niece Lashonda Thomas was home, in which a silver Ford Fusion pulled into his driveway and shot at his house before speeding away. Reed testified that Allstate never followed up on these statements and did not check the reports to law enforcement before denying Harris's claim. This same shooting incident was described by Lashonda Thomas in a February 25, 2020 deposition and by LaQuale's 2017 EUO.

Then there is the dispute about Harris's location at the time of the fire. In his EUO, Harris stated that he was in Texas with his brother Calvin Williams and sister Carla Harris when the fire occurred. He provided Allstate with phone numbers for Carla Harris and her son Chadwick Farmer, who also resided in Texas and could attest to him being there. Allstate never contacted these individuals before denying Harris's claim. In fact, Reed testified that Allstate had no reason to believe Harris was not in Texas and stated that Allstate had no proof that Harris procured any particular person to set the fire.

Cellphone records indicate that Harris was in Texas when he received the calls about the fire. Harris stated that he received calls from his father and from his neighbor Brent Abraham. Harris provided Allstate with phone numbers for each of these witnesses as well as the phone number for his mother. Allstate never spoke to Abraham or Harris's parents.

The 911 report indicates that the fire was called in at approximately 3:51 am. Help arrived on the scene at 4:03 am. Minutes before being notified of the fire around 4:09 am, Harris's phone records indicate that he was making phone calls. Two years later, during Harris's deposition, Allstate recited the number to Harris and asked him if he knew who it belonged to. Harris was unable to identify the number. His brief now asserts that it is the number to his answering service, but there is no record evidence from him—or Allstate—as to its true identity.

## II.      Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Levy Gardens Partners 2007, L.P. v. Commonwealth Land Title Ins. Co.*, 706 F.3d 622, 628 (5th Cir. 2013) (citation omitted).

A party seeking to avoid summary judgment must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(c). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013). Cross-motions

for summary judgment are to be considered independently with the facts and resulting inferences viewed in favor of the nonmovant. *Id*.

## III. Discussion

Because this case is proceeding in diversity, the applicable substantive law is that of the forum state of Mississippi. *Capital City Ins. Co. v. Hurst*, 632 F.3d 898, 902 (5th Cir. 2011). State law is determined by looking to the decisions of the state's highest court. *St. Paul Fire and Marine Ins. Co. v. Convalescent Servs., Inc.*, 193 F.3d 340, 342 (5th Cir. 1999).

Harris argues that summary judgment is appropriate on Allstate's civil arson affirmative defense because Allstate has failed to prove all three of the defense's elements by clear and convincing evidence. Allstate argues that sufficient circumstantial evidence exists to support a civil arson defense, and that Harris breached the policy's "concealment or fraud" clause—which also provides grounds to deny the claim.

The Court will begin with Harris's motion.

### A. Harris's Motion for Partial Summary Judgment

Under Mississippi's civil arson defense, Allstate bears the burden of proving, by clear and convincing evidence, (1) that the fire was incendiary, (2) that the insured had motive to destroy the property, and (3) that the insured had the opportunity to set the fire or to procure its being set by another. *McGory v. Allstate Ins. Co.*, 527 So. 2d 632, 634–35 (Miss. 1988). Under Mississippi law, civil arson can be proven circumstantially. *Id*. at 634.

The first element is not disputed by the parties. And the Court will assume for present purposes that Allstate has sufficient evidence for the second element to proceed to trial. This Court is left only needing to examine the third element, opportunity, to come to a determination on Harris's motion.

Harris argues that he did not have the opportunity to set the fire because he was in Texas with his brother and sister at the time. Harris points to Reed's deposition where, when asked if Allstate had evidence that Harris or another person procured the fire, Reed answered "no." Additionally, Harris cites to his EUO, where he provided Allstate with the phone numbers of Carla Harris and Chadwick Farmer, persons who could corroborate that he was in Texas.

To prove opportunity, Allstate references testimony that only Harris and LaQuale had keys to Harris's home, and evidence that the fire started inside the house. It argues that because several of Harris's family members live in Vicksburg, including his parents, a sister, and his daughter, any one of them could have entered the house and set the fire. Allstate's motion for summary judgment, addressed *infra*, adds that there was no forced entry, meaning someone would have needed a key. Allstate has not cited any part of the record indicating, even circumstantially, that evidence exists for this assertion.[3] Lastly, Allstate misrepresents Harris's phone records to indicate that Harris was making phone calls minutes before the fire was called in.[4] Allstate does not know who Harris was calling and Harris could not identify the number when read to him during his deposition, two years after the fire.

Allstate points this Court to the case of *Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.*, 169 F.3d 43 (1st Cir. 1999). Regarding opportunity, the *Ferrara* court noted that access to the burned vessel was "limited" and that the fire department needed to force its entry when it arrived at the scene. Because the fire started in the boat's engine room, these two factors together could lead a jury to find that the arsonist had a key, that court concluded. *Id.* at 54. In the present

---

[3] In fact, the fire investigation Allstate relies upon shows evidence of forced entry, gasoline, and a small area of burning at the storage building adjacent to Harris's house.

[4] Harris's phone records show him making phone calls from approximately 3:57 am to 4:07 am. The fire report indicates that the fire was called in at approximately 3:51 am. Therefore, Harris's first outgoing call was made six minutes after the fire had been called in.

7

case, Allstate has not presented evidence that the Vicksburg Fire Department had to force its entry into Harris's home upon arrival. More importantly, in *Ferrara*, which applied the law of Massachusetts, the standard of proof for civil arson was preponderance of the evidence. *Id*. at 53. Mississippi law requires proof by clear and convincing evidence. *McGory*, 527 So. 2d at 634.

This leaves the following facts as Allstate's articulated evidence of opportunity: (1) Harris and his daughter had keys to the house, (2) Harris's family lived in the same city where the house was located, (3) the fire started inside the house with gasoline, and (4) Harris was placing phone calls after the fire was called in, but before he had been notified of it.

Arson may be proven with circumstantial evidence. *Russ v. Safeco Ins. Co. of Am.*, No. 2:11-CV-195-KS-MTP, 2013 WL 1310501, at *27 (S.D. Miss. Mar. 26, 2013). "[C]ircumstantial evidence is evidence that, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist." *Id*. But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Hous.*, 337 F.3d 539, 541 (5th Cir. 2003) (citation omitted).

There is no evidence that Harris was in Mississippi at the time, so he could not have set the fire himself. This leaves only the possibility that he procured another to set the fire. Critically, though, Allstate's claim consultant and Rule 30(b)(6) designee, Reed, admitted in a deposition that Allstate had no evidence that Harris procured another to set the fire. The admission requires summary judgment in Harris's favor.

To the extent further discussion is necessary, Allstate has not pointed to evidence indicating that whoever set the fire needed a key. Therefore, the fact that only Harris and LaQuale had keys to the home do not create a logical inference that Harris had opportunity to procure another to set the fire. This leaves only the facts that Harris was making phone calls prior to being notified of the

fire, that some of his family lived in Vicksburg, and someone set the fire inside the house. Those facts, without more, do not allow for a logical inference that Harris had opportunity to procure another to set the fire.

For these reasons, Allstate has not met its burden of demonstrating a fact dispute on its civil arson defense. Harris's motion for partial summary judgment is granted.

### B. Allstate's Motion for Summary Judgment or Partial Summary Judgment

#### 1. Misrepresentation

Allstate's policy states: "We do not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." This is commonly known as a "concealment clause."

Under Mississippi law, concealment clauses are "reasonable and valid, and are to be given reasonable interpretation." *Taylor v. Fireman's Fund Ins. Co.*, 306 So. 2d 638, 644 (Miss. 1974). To establish a violation of the concealment clause, the insurer must prove, by a preponderance of the evidence, that the insured's statements were (1) false, (2) material, and (3) knowingly and willfully made. *McCord v. Gulf Guar. Life Ins. Co.*, 698 So. 2d 89, 92 (Miss. 1997). Mississippi courts take a "broad view of materiality" for misrepresentations made in the course of an insurance claim investigation. *Edmiston v. Schellenger*, 343 So. 2d 465, 466 (Miss. 1977).

##### a. The April 2017 Flood

Allstate makes two arguments that Harris and LaQuale's statements regarding flood damage are inconsistent. First, Allstate contends that during his EUO, Harris stated that on April 3, 2017, flood waters only reached the edge of his carport and no water entered the home. Allstate then points to LaQuale's EUO where she stated that her father's house has flooded two or three times and where she describes damage to her clothes, the carpet, and a table and couch. Second,

9

Allstate argues that Harris misrepresented the extent of the April 3 flood. It compares Harris's EUO, where he stated that water reached the edge of his carport, to Harris's deposition, where he stated that water reached the carport and patio, leaving debris marks. Allstate argues that these misrepresentations are material because information regarding the April 3 flood and the extent of the damage provide motive for Harris to burn down his home.

Harris, however, contends that Allstate misrepresents his and LaQuale's testimony. He argues that LaQuale was actually asked if Harris's home had *ever* flooded and the extent of damage from past floods. Harris says LaQuale's testimony was not referring to the April 3 flood specifically. He references LaQuale's subsequent deposition, where she stated that her prior testimony was not referring to the April 3 flood.

Again, Allstate's policy does "not cover any loss or occurrence in which any insured person has concealed or misrepresented any material fact or circumstance." Here, there is a fact dispute as to whether misrepresentations by an insured person were false or knowingly and willfully made. It is for a jury to decide if LaQuale's ambiguous testimony during her EUO referred to the April 3 flood or to prior floods. It is also for the jury to decide the credibility of LaQuale's deposition where she clarifies her EUO. As this Court has noted before, "[w]ith these inconsistencies, granting summary judgment in favor of Allstate would require the Court to make 'impermissible credibility determinations.'" *Watson v. Allstate Prop. & Cas. Ins. Co.*, No. 3:16-CV-987-CWR-FKB, 2018 WL 3300236, at *5 (S.D. Miss. July 3, 2018) (quotation and citation omitted); *see also Mahli, LLC v. Admiral Ins. Co.*, No. 1:14-CV-175-KS-MTP, 2015 WL 4915701, at *12 (S.D. Miss. Aug. 18, 2015) ("[t]he Court is not permitted to make credibility determinations or weigh the evidence"). The record reflects only the question asked and the answer given, and from that, it is not apparent that LaQuale's statements about the house flooding referred to April 3, 2017. For that same reason,

it cannot be established that her statement was false or knowingly and willfully made.[5] Clarification of LaQuale's testimony will provide the jury grounds to determine if Harris's assertions about the April 3 flood were false or not.

For this reason, this part of Allstate's motion is denied.

### b. Testimony Regarding Who Lived at Harris's Home

Allstate next argues that Harris misrepresented who lived at his house. Allstate contends that this is a material misrepresentation because it prevented Allstate from interviewing individuals who could have potentially given testimony about the floods and flood damage at Harris's home.

Allstate first references Harris's EUO. There, when asked who had lived at the house with him since he moved in, Harris answered that LaQuale lived with him and that Calvin Williams stayed with him from time to time. Allstate then points to Harris's answer to Allstate's interrogatories. There, when asked who lived at the house in the past 10 years, Harris responded that LaQuale lived at his residence for 11 years and Calvin Williams for 12 years. Lastly, Allstate points to Harris's deposition where he states that multiple other individuals had stayed at his home at different points prior to the fire.

Harris does not deny his inconsistent statements. Instead, he argues that the inconsistency is not material. Harris points to the fact that Allstate found out about the individuals who had lived at Harris's home during LaQuale's EUO and, even after knowing this, did not interview them before denying his claim.

In its broad view of materiality, the Mississippi Supreme Court states that if the purpose of the insurance company requiring answers to certain questions "was to enable the Company to

---

[5] The same is true of Harris's testimony about where the water reached. On this record, the Court cannot tell whether his mention of the patio and debris marks is a clarification or a contradiction. The Court also cannot tell whether that dispute is material, since Harris consistently testified that the water did not enter the house.

possess itself of all knowledge, and all information as to other sources and means of knowledge, in regard to the facts, material to their rights, to enable them to decide upon their obligations, and to protect them against false claims," then the information requested is likely material. *Edmiston* 343 So. 2d at 466-67. In that case, three years passed before the insured corrected his statements regarding out-of-town visitors at his home prior to the fire. *Id*. at 466. The court found that, judging materiality at the time of the misrepresentation, information about out-of-town visitors was material since the company had the right to interview any individual who had knowledge of the fire. *Id*. at 467.

Applying the standard set forth in *Edmiston*, at the time of the investigation, Allstate had received information from an insured person regarding who had lived at Harris's home. Allstate was not denied knowledge which could have enabled it to protect itself against false claims. Unlike in *Edmiston* where the sole insured person did not provide information to the company for three years, here, Allstate did have the information prior to making its decision on the claim. The situation is analogous to the Fifth Circuit's finding that if an insured lies on an application for insurance, and the insurer has "actual knowledge of the true facts" or at least has sufficient indications to put the insurer on notice, the insurer then cannot rely on the misrepresentation if a reasonable inquiry could have revealed the truth. *New York Life Ins. Co. v. Strudel*, 243 F.2d 90, 93 (5th Cir. 1957).

Assuming that Harris's statements were false, and willfully and knowingly made, therefore, Allstate has not met its burden of proving that no genuine factual dispute exists as to materiality. Therefore, the materiality of Harris's misrepresentation about who lived at his house is a question for the jury to decide.[6]

---

[6] As a general matter, and taking a broad view of materiality, it is material for an insurer to ask and seek to know who was living in a property at the time of a fire. But the specific record in this case, as developed during discovery,

For this reason, this part of Allstate's motion is denied.

### c. Dismissal for Failure to Obey an Order to Provide or Permit Discovery

Allstate also argues that Harris's false discovery responses warrant the dismissal of this lawsuit. A court may dismiss an action or proceeding, in whole or in part, "if a party fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A)(v). However, "[d]ismissal of a case may be ordered as a sanction for violating a discovery order only when (1) the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct; (2) the violation of the discovery order is attributable to the client, as opposed to counsel; (3) the non-compliant party's conduct substantially prejudices the opposing party; and (4) a less drastic sanction would not substantially achieve the desired deterrent effect." *Tate v. Sharp*, No. 1:11-CV-268-GHD, 2013 WL 5724059, at *4 (N.D. Miss. Oct. 21, 2013). Where these factors are not met, dismissal is not warranted. *Paddlewheel Properties, Inc. v. Waste Mgmt. of Miss., Inc.*, 23 F. Supp. 2d 670, 673-74 (S.D. Miss. 1997).

The present evidentiary record does not support a dismissal on this basis. Allstate has shown Harris's false answer to the interrogatory on who had lived at this house. It has not pointed to other record evidence indicating that all of the *Tate* elements have been met.

This part of Allstate's motion is denied.

### 2. Partial Summary Judgment on Harris's Claim of Bad Faith

Finally, Allstate seeks summary judgment on Harris's claim for bad faith denial of insurance benefits.

---

shows that the answer to that question was not material to Allstate, because it received the full answer from LaQuale and declined to follow-up.

A party seeking to establish a bad faith claim has a heavy burden of proof. *Jenkins v. Ohio Cas. Ins. Co.*, 794 So. 2d 228, 232 (Miss. 2001). The claim should not be submitted to the jury unless a fact issue exists as to whether (1) "the insurer lacked an arguable or legitimate basis for denying the claim," and (2) "the insurer committed a willful or malicious wrong, or acted with gross and reckless disregard for the insured's rights." *Id*. at 232-33.

The question of whether the insurer had an arguable reason for denial is an issue of law for the court. *Murphree v. Fed. Ins. Co.*, 707 So. 2d 523, 531 (Miss. 1997). An arguable basis is a reason "sufficiently supported by credible evidence as to lead a reasonable insurer to deny the claim." *Russ*, 2013 WL 1310501, at *13 (citation omitted). An arguable basis can exist even when there may be evidence to the contrary. *Id*.

Allstate contends that because the fire was incendiary, it had an arguable basis to deny Harris's claim. Moreover, it observes that during its investigation, it received a Substantial Damage Estimator Report stating that Harris's home sustained $21,513.36 in damages during the April 3 flood, which gave Harris motive to burn his house. It also references the inconsistencies in Harris's testimony regarding the April 3 flood and about who lived at his house. Allstate also points to Harris's late and overdue utility payments, overdrawn account, and extinguished debts by reason of the fire, as further motive to burn his home.

Harris responds that Allstate failed to reasonably investigate the claim prior to denying it. He argues that Allstate never tried to corroborate his whereabouts, never followed up on his testimony regarding threats he received, never interviewed people who had lived at his home, and never corroborated who he was calling the morning of the fire.

A plaintiff's claim for bad faith refusal to pay insurance benefits must go beyond merely demonstrating that the investigation was negligent. *Id*. at 12. The negligence "must be such that a

proper investigation by the insurer would easily adduce evidence showing its defenses to be without merit." *Id*.

That is not the situation here. The evidentiary record provides a basis to conclude that Allstate had an arguable or legitimate basis to deny the claim. Even when drawing all reasonable inferences in favor of Harris, and assuming Allstate had done all the things Harris claims Allstate failed to do, it cannot be said that Allstate would have discovered evidence showing that its defenses would be without merit. The fire was incendiary. Allstate had a report stating Harris's home suffered $21,513.36 in damages during the April 3 flood, Harris's financial records showed late payments and multiple overdrawn balances, and the inconsistent EUOs indicated that Harris had not told the truth about who lived at the house. For these reasons, it cannot be said that the insurer lacked an arguable or legitimate basis for denying the claim.

Allstate's motion for partial summary judgment is granted.

## IV.    Conclusion

Harris's motion on the civil arson defense is granted. Allstate's motion is granted in part and denied in part. Harris's bad faith claim will not proceed to trial.

**SO ORDERED**, this the 30th day of June, 2020.

s/ Carlton W. Reeves  
UNITED STATES DISTRICT JUDGE